UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JIMMY L. ADKINS, KEREM BAY, LANA BONGIOVI, CLEMENT CAMPBELL, ANGELO CARPOLA, ALEXANDER CIOFFI, PATRICK H. CRAIN, DAVID CRONK, NANCY F. DEBE, DENNIS DELUCI, CHARLES J. ENGEL, MATTHEW FARRELL, BENNY FAILLA, ROBERT J. GIANI, JOHN R. LACKENBAUER, JEAN-PARNELL LOUIS, WILLIAM J. MAHER, MICHAEL G. MCDOWELL, JOHN ROSSI, WILLIAM R. SHANNON, FRED H. SMITH, GARY E. SOBEK, DAMIAN SOBERS, CARMELA SZYMANSKI, ANTHONY TANZA and CYNTHIA TORRES,<br><br>                                        Plaintiffs,<br><br>              *-against-*<br><br>GARDA CL ATLANTIC, INC.,<br><br>                                        Defendant. | Case No. 16-cv-00641<br>*D'Aguino v. Garda CL Atlantic* |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFFS' MOTION TO VACATE AND REMAND**

Steven John Moser (SM1133)
Moser Law Firm, P.C.
5 East Main Street
Huntington, NY 11743
(516) 671-1150
smoser@moseremploymentlaw.com

*Attorneys for Plaintiffs Kerem Bay, Lana Bongiovi, Clement Campbell, Sara Cioffi (as
Administratrix of the Estate of Alexander Cioffi), Angelo Caropola, Patrick Crain, David L.
Cronk, Benny Failla,  Robert Giani, John Lackenbauer, Michael McDowell, William Maher,
John Rossi, Gary Sobek, Damian Sobers & Cynthia Torres*

## Contents

FACTS .................................................................................................................. 1

GARDA'S OPPOSITION .................................................................................... 1

REQUEST FOR EXTENSION NUNC PRO TUNC ........................................... 3

ARGUMENT ...................................................................................................... 3

   I.    THE COURT LACKS JURISDICTION AND REMAND IS APPROPRIATE ......... 3

   II.   THE CLAIMS OF JOHN ROSSI SHOULD NOT BE SEVERED ............................. 4

       A.   Plaintiffs will suffer legal prejudice absent vacatur and remand ........................ 4

       B.   Garda has not identified any cognizable prejudice it will suffer if the dismissal is vacated and the case remanded to state court ..................................... 6

       C.   Severing the claims of John Rossi will not avoid the need for further litigation. 7

       D.   Severing the claims of John Rossi is inappropriate in light of the State's interest and raises concerns of federal-state comity ........................................ 7

       E.   Rule 21 should not be used to "conjure" jurisdiction where none exists or incentivize casual allegations of diversity .............................................. 8

       F.   Rule 21 has only been used to sever non-diverse Plaintiffs in multi-district litigation involving thousands of joined plaintiffs covering numerous states. .... 9

   CONCLUSION ................................................................................................ 10

## FACTS

Defendant Garda CL Atlantic, Inc.'s headquarters are located in Florida. In early 2015, Garda closed its Central Islip facility and transferred one of the Plaintiffs, John Rossi, to Florida. After Rossi relocated to Florida, the Plaintiffs, current and former employees of Garda, sued Garda in the New York State Supreme Court, Queens County, for violations of the NYLL.

Garda removed the action to federal court, claiming complete diversity of citizenship. However, when faced with a motion to dismiss for lack of jurisdiction, Garda asked for jurisdictional discovery regarding Mr. Rossi's citizenship. *See* ECF No. 111. In other words, Garda needed to *"discover"* whether or not its allegations of complete diversity made years earlier were correct.

Moreover Garda has not furnished a single document to substantiate its claims of complete diversity of citizenship.[1] Garda has refused to furnish John Rossi's employee file, W-2s or W-4s, or pay stubs, all of which would evidence that Mr. Rossi was a citizen of Florida.

## GARDA'S OPPOSITION

Garda opposes the instant motion, claiming that "the Court lacks the authority to remand the case to state court" because the final judgment was entered on May 18, 2020.[2] Garda now asserts that the Court's adoption of a stipulation dismissing the claims of Plaintiffs Adkins, Debe and Louis (*see D'Aguino v. Garda,* 16-CV-00641, ECF No. 99) constitutes a final judgment even though the case continues to be litigated in 2024. This statement is incorrect, as Garda moved to dismiss this case on October 1, 2020[3], more than five months after the case was resolved in its entirety.

---

[1] There is no evidentiary support for Garda's contention that "Rossi was diverse from Defendant at the time of removal." *See* Def. MOL, at 8.

[2] Def. MOL, at 1; *see also* Def. MOL, at 5 (stating that "The Court Lacks Authority to Remand to State Court Because It Entered Its Final Judgment in May 2020"), at 7 (asserting that "this Court now lacks the ability to remand this action to state court.")

[3] *See D'Aguino v. Garda,* 16-cv-00641 (ECF No. 114).

1

Garda also states that Plaintiffs did not raise any jurisdictional challenges until "[i]n or around May 2020, after the action had been dismissed by this Court *with prejudice* in its entirety[.]"[4] This statement is also factually incorrect. The jurisdictional challenge was first raised on January 28, 2020, before Garda's phantom "final judgment" was entered.[5] A Notice of Appeal based upon the jurisdictional challenge was filed on March 11, 2020.[6] However, the Second Circuit so-ordered a stipulation dismissing Plaintiffs' appeal, as the parties had agreed that the appeal was "premature in that some claims remain pending in district court and no Fed. R. Civ. P. 54(b) certification had been issued."

Garda claims that Rossi was a citizen of Florida at the time of removal. This statement is also factually incorrect and unsupported by any reference to admissible evidence.

Finally, Garda argues that the Court should disregard the allegations of complete diversity in Defendant's Notice of Removal and manufacture jurisdiction over the non-diverse plaintiffs by severing and remanding the claims of John Rossi only.

## REQUEST FOR EXTENSION NUNC PRO TUNC

Plaintiffs respectfully request *an extension to file the instant reply, along with the Defendant's opposition, nunc pro tunc* April 10, 2024,pursuant to FRCP 6(b)(1)(A).   "[A]n application for extension of time under Rule 6(b)(1)(A) normally will be granted in the absence of bad faith on the part of the party seeking relief or prejudice to the adverse party." *Alexander v. Saul*, 5 F.4th 139, 154 (2d Cir. 2021)(quoting 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 1165 (4th ed. 2021 update)).  On January 19, 2024, the Court directed the

---

[4] Def. MOL, at 3.
[5] *See* Letter Motion to Dismiss for Lack of Jurisdiction (*D'Aguino v. Garda,* 16-cv-00641, ECF No. 85).
[6] *D'Aguino v. Garda,* 16-cv-00641, ECF No. 89.

undersigned to file the instant reply on or before March 4, 2024. The date to submit the reply was *not entered by the undersigned's calendaring clerk.* On April 2, 2024 the failure to calendar the March 5, 2024 date was discovered. I also discovered that we did not have a copy of the deposition transcript of John Rossi, which was necessary to prepare the instant reply. We obtained the complete transcript directly from the court reporter on April 10, 2024 and filed the instant reply the same day. *See* Moser Declaration dated April 10, 2024.

## <u>ARGUMENT</u>

### I.   THE COURT LACKS JURISDICTION AND REMAND IS APPROPRIATE

Article III, section 2 of the Constitution states that the "judicial Power shall extend . . . to Controversies . . . between Citizens of different States." U.S. Const. art. III, § 2. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994). Federal law permits a defendant to remove a case initially filed in state court into federal court only "if they satisfy the requirements of diversity jurisdiction." *Alvarado v. Sweetgreen, Inc.*, No. 23-cv-8948 (LJL), 2024 U.S. Dist. LEXIS 8514, at *18-19 (S.D.N.Y. Jan. 17, 2024). The Second Circuit has noted that "out of respect for the limited jurisdiction of the federal courts and the rights of states, we must resolve any doubts against removal." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007).[7]

Here, the Plaintiffs filed an action in New York state court for New York Labor Law violations. Defendant filed a notice of removal, which was defective as (1) it never alleged the

---

[7] Garda's statement that "once a final judgment has been entered, neither party may seek remand"[7] is neither relevant nor accurate. It is not relevant because no final judgment has been entered. It is inaccurate because *Prop. Clerk, City Police Dep't v. Fyfe*, 197 F. Supp. 2d 39, 40 (S.D.N.Y. 2002) does not support this proposition, and Garda concedes that "if the district court lacks subject matter jurisdiction, the case shall be remanded." Def MOL at 6 (citing 28 USC 1447).

citizenship of the parties, only the residence, and (2) it falsely alleged that John Rossi was a resident of New York at the time the action was commenced. Moreover, Garda knew that it had transferred John Rossi to Florida before the commencement of the action. Garda has refused to furnish John Rossi's employee file, which would show that Garda had transferred Mr. Rossi to Florida and knew he was a resident and citizen of Florida. Then, when pressed for the basis upon which Garda had alleged complete diversity, Garda stated that it needed "jurisdictional discovery" to determine whether the case had been properly removed.

In fact, the testimony of John Rossi unquestionably establishes that Mr. Rossi was a citizen of Florida at the time of removal and therefore there was no federal jurisdiction.[8]  More specifically, Mr. Rossi testified that he worked in Central Islip from 1979 until January 2015. Rossi Dep. 37:2-5.[9]  He was transferred to Garda's Long Island City facility for approximately three weeks. Rossi Dep. 39:9-18.  He requested a transfer to Garda's West Palm Beach facility. Rossi Dep. 39:19-21.  He moved to Florida in February 2015 (25: 3-4; 61:25-62:2), and actually worked for Garda in West Palm Beach for five months. Rossi Dep. 40:5-9.   Since moving to Florida in February 2015 he has lived there continuously (64:4-7) without the intention to move anywhere else.  Rossi Dep. 64:8-10.[10]

## II.      THE CLAIMS OF JOHN ROSSI SHOULD NOT BE SEVERED

### A.      Plaintiffs will suffer legal prejudice absent vacatur and remand

Having removed the NYLL claims to federal Court, Garda invoked the federal plausibility pleading standard to Plaintiffs' NYLL claims. The Court then dismissed the NYLL claims of 23 of the 26 plaintiffs for failure to meet this heightened standard. See Decision (5-8) citing *Nakahata v.*

---

[88] Garda never provided Mr. Rossi with a copy of the deposition transcript.  Therefore, it was omitted from the initial motion.

[9] Annexed to the Moser Declaration dated April 10, 2024.

[10] Alarmingly, Garda has suggested that Mr. Rossi resided in Florida as early as 2011. *See* Rossi Dep. 65:8-11. Although it accuses Mr. Rossi of providing a Florida address in 2011 (*id.*), it has not furnished a single document to substantiate this claim.

*N.Y.-Presbyterian Healthcare Sys.*, 723 F.3d 192, 201 (2d Cir. 2013) *DeJesus v. HF Mgmt. Servs.*, 726 F.3d 85, 89, 89 n.5 (2d Cir. 2013), and *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 109 (2d Cir. 2013).

Defendant mistakenly argues that the Plaintiffs were not prejudiced by the invocation of the federal pleading standard because "the pleading requirements for a claim for unpaid overtime under the relevant provisions of the NYLL are identical to those under the [FLSA]." Def MOL at 12 (citing *Gutierrez v. Bactolac Pharm.*, No.: 609612/2019E, 2019 N.Y. Misc. LEXIS 20379, at \*5 (Sup. Ct. Sept. 26, 2019). Defendant is once again incorrect. In *Gutierrez v. Bactolac*, the plaintiff-employees were represented by the Moser Law Firm. *Id.* The defendant-employer argued that the pleading standard enunciated in *Lundy* and its progeny by the Second Circuit should be applied to NYLL overtime claims asserted in state court. Judge Rebolini, explicitly relying on *Lundy, Nakahata* and *DeJesus,* dismissed the employees' NYLL overtime claims for failing to provide the details required by the Second Circuit in those decisions. *Id.*

However, the decision was overturned on appeal by the Appellate Division, Second Department, which held:

> The Supreme Court should have *denied* that branch of the defendant's motion which was pursuant to CPLR 3211(a)(7) to dismiss the [overtime] cause of action. Contrary to [Judge Rebolini's] determination, the pleading requirements for a cause of action alleging unpaid overtime under the relevant provisions of the New York Labor Law are not identical to those under the federal Fair Labor Standards Act (29 USC § 201 *et seq.*), as the federal pleading requirement of plausibility in a cause of action such as this is not an element of the analysis under CPLR 3211(a)(7).
>
> \* \* \*
>
> [Instead], New York's pleading standard is embodied in CPLR 3013, which provides that "[s]tatements in a pleading shall be sufficiently particular to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action or defense." Here, the plaintiffs' allegations in support of the first cause of action, seeking unpaid overtime wages, were sufficient to state a cause of action for

violations of Labor Law article 19, § 650 et seq., and the supporting New York
State Department of Labor Regulations, 12 NYCRR part 142.

*Gutierrez v. Bactolac Pharm., Inc.*, 2022 NY Slip Op 06233, ¶ 2, 210 A.D.3d 746, 747, 177

N.Y.S.3d 704, 705 (App. Div. 2nd Dept.).

      Garda's mistaken removal to federal court resulted in the ultimate prejudice to the Plaintiffs
– dismissal with prejudice at the pleading stage. Because the removal resulted in such prejudice to
Plaintiffs, the decision dismissing the claims with prejudice should be vacated, and the case
remanded.

      **B.**    **Garda has not identified any cognizable prejudice it will suffer if the dismissal
is vacated and the case remanded to state court**

      Here, Garda does not state that it will be prejudiced should the case be remanded to state
court. To the contrary, Garda claims that following remand, "Plaintiffs frequency of pay claims
would unequivocally be dismissed" and "the state court would [similarly] find that all but three
Plaintiffs failed to adequately plead NYLL overtime claims." Def MOL at 12. In other words,
according to Garda, the only prejudice that it will suffer is the costs associated with a motion to
dismiss under CPLR 3013.

      In deciding whether to exercise its discretion to sever under Rule 21, a court should consider
whether severance would result in "prejudice." *Baergas v. City of N.Y.*, No. 04 Civ. 2944 (BSJ)
(HBP), 2005 U.S. Dist. LEXIS 18785, at *11 (S.D.N.Y. Aug. 25, 2005) (compiling cases). The
instant motion to dismiss is analogous to a motion to voluntarily dismiss under Rule 41. In the
context of a Rule 41 motion to dismiss, the Second Circuit has held that dismissal is *only* improper
if "the defendant would suffer some plain legal prejudice other than the mere prospect of a second
lawsuit." *Camilli v. Grimes*, 436 F.3d 120, 123 (2d Cir. 2006).

      Moreover, courts analyze the "appropriateness of severance pursuant to Rule 21 in
conjunction with the requirements of Rule 20(a)." *Baergas*, 2005 U.S. Dist. LEXIS 18785, at *12

(citing *United States v. Yonkers Bd. of Educ.*, 518 F. Supp. 191, 195-96 (S.D.N.Y. 1981)). Rule 20 expressly states that "Persons may join in one action as plaintiffs if (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action."

**C.     Severing the claims of John Rossi will not avoid the need for further litigation.**

The Second Circuit has observed that the dual purposes of severing a non-diverse defendant are to "preserve[] a final judgment in favor of the remaining defendants and prevent[] repetitive litigation." *Rost v. Pfizer, Inc.*, 502 F. App'x 51, 52 (2d Cir. 2012). Here, if the Court severs the claims of John Rossi, his overtime and frequency of pay claims, which are identical to the claims of the other 22 Plaintiffs, will still be litigated in state court.

**D.     Severing the claims of John Rossi is inappropriate in light of the State's interest and raises concerns of federal-state comity**

New York's overtime provision is found in the miscellaneous industry wage order, which was promulgated by the New York State Commissioner of Labor pursuant to her authority under Article 19 of the NYLL. The express purposes of Article 19 and its implementing regulations were stated by the New York State legislature as follows:

> There are persons employed in some occupations in the state of New York at wages insufficient to provide adequate maintenance for themselves and their families. Such employment impairs the health, efficiency, and well-being of the persons so employed, constitutes unfair competition against other employers and their employees, threatens the stability of industry, reduces the purchasing power of employees, and requires, in many instances, that wages be supplemented by the payment of public moneys for relief or other public and private assistance. Employment of persons at these insufficient rates of pay threatens the health and well-being of the people of this state and injures the overall economy.

NY Lab Law 650. The "legislative purpose of section 191…is to protect workers who are generally dependent upon their wages for sustenance." *Vega v. CM & Assoc. Constr. Mgt., L.L.C.*, 2019 N.Y. Slip Op. 06459 (1st Dep't Sept. 10, 2019).

In this case, it is indisputable that (1) the Plaintiffs' claims were properly brought in the New York State Supreme Court, (2) the assertion of complete diversity by Garda was inaccurate, and (3) no subject matter jurisdiction existed over the Plaintiffs' NYLL claims at the time of removal. Under these circumstances, it is inappropriate to permit one Plaintiff – John Rossi – to vindicate his NYLL claims in State Court, where they originated, and at the same time foreclose the remaining 22 plaintiffs from exercising the same right. The result is especially troubling because these 22 plaintiffs are *citizens of New York.* In other words, Defendant would have this Court intervene in a state action over which there was no federal jurisdiction and dismiss NYLL claims under federal procedural law. Then, when the jurisdictional issue is raised, Garda would have the Court only apply its decision dismissing the NYLL claims to those plaintiffs *who are citizens of New York.*

### E.   Rule 21 should not be used to "conjure" jurisdiction where none exists or incentivize casual allegations of diversity

The Second Circuit has cautioned against the use of the rule to conjure jurisdiction.  "To use [the Federal Rules] to establish jurisdiction would be to bootstrap jurisdiction into existence; it is axiomatic that the Federal Rules of Civil Procedure do not create or withdraw federal jurisdiction." *Reinschmidt v. Exigence L.L.C.*, No. 13-CV-01153(A)(M), 2014 U.S. Dist. LEXIS 68694, at *8 (W.D.N.Y. Apr. 21, 2014) (citing *Chao v. Russell P. Le Frois Builder, Inc.*, 291 F.3d 219, 229 (2d Cir. 2002)).

> While Rule 21 is routinely employed in cases that began in federal court, the 'federal courts have frowned on using the Rule 21 severance vehicle to conjure removal jurisdiction that would otherwise be absent.'" *Sons of the Revolution,* 2014 U.S. Dist. LEXIS 171654, 2014 WL 7004033, at *2 (alteration in original) (quoting

*Brown v. Endo Pharm., Inc.,* 38 F. Supp. 3d 1312, 2014 WL 3864626, at *7 (S.D. Ala. 2014)); *see Mancinone v. Allstate Ins. Co.*, No. 20-CV-82, 2020 U.S. Dist. LEXIS 175500, 2020 WL 5709675, at *6 n.6 (D. Conn. Sept. 24, 2020) (recognizing that courts in the Second Circuit have "expressed reticence at circumventing the removal statute's strictures to broaden the reach of federal diversity jurisdiction"); *see also Labrecque v. Johnson & Johnson*, No. 15-CV-1141, 2015 U.S. Dist. LEXIS 134550, 2015 WL 5824724, at *2 (D. Conn. Oct. 2, 2015) (declining to preserve subject matter jurisdiction by severing non-diverse parties, citing the "unique jurisdictional concerns" presented in the context of cases removed to federal court); accord *Nolan*, 2013 U.S. Dist. LEXIS 96090, 2013 WL 3475475, at *7-8 (declining to create subject matter jurisdiction by severing non-diverse parties, recognizing the "misuse of Federal Rule 21" to create jurisdiction when an action is removed from state court); Kips Bay, 2015 U.S. Dist. LEXIS 96957, 2015 WL 4508739, at *4 (same).

*Abruzzo Docg Inc. v. Acceptance Indem. Ins. Co.*, No. 20-CV-4160 (MKB), 2021 U.S. Dist. LEXIS 220196, at *28-29 (E.D.N.Y. Nov. 15, 2021)

Careless allegations of complete diversity should not be rewarded or incentivized.

[I]n the long run judicial efficiency would be better served by holding parties accountable (by dismissal, without prejudice) for their failure to carefully consider jurisdictional facts before commencing litigation. "[C]ases brought in federal courts in which diversity of citizenship is not properly alleged and/or does not exist are far too common", *United Republic Insurance Company, in Receivership v. Chase Manhattan Bank,* 315 F.3d 168, 170 (2d Cir. 2003), resulting in "waste of litigants' and courts' resources that could have been avoided". *Franceskin v. Credit Suisse*, 214 F.3d 253, 256 (2d Cir. 2000).

*Reinschmidt*, 2014 U.S. Dist. LEXIS 68694, at *10.

**F.    Rule 21 has only been used to sever non-diverse Plaintiffs in multi-district litigation involving thousands of joined plaintiffs covering numerous states.**

Garda cites to a decision from the District of New Jersey (clearly marked "NOT FOR PUBLICATION") to support its request to sever a non-diverse plaintiff and manufacture jurisdiction. *See* Def MOL, at 9 (citing *In re Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Litigation*, 3:18-cv-05534-FLW-LHG, Dkt. No. 151 (D. N.J. Jan 19, 2021)). However, there is simply no comparison between the *Johnson & Johnson MDL* and this case. *Johnson & Johnson* involved thousands of plaintiffs who were joined

9

in multi-district product liability litigation alleging that Johnson & Johnson's talcum powder caused cancer.[11] The court specifically "note[d] the practical importance of severing plaintiffs *in cases such as this*. The joinder of large numbers of unrelated plaintiffs who are citizens of different states creates a snarl of personal jurisdictional issues, as the Supreme Court has stressed that personal jurisdiction must be evaluated on a plaintiff-by-plaintiff basis." 3:18-cv-05534-FLW-LHG, Dkt. No. 151 (D. N.J. Jan 19, 2021)(citing *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781-82, 198 L. Ed. 2d 395 (2017)).

## CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that the Court remand the case to the Supreme Court, Queens County, for lack of jurisdiction and vacate the order dismissing the Plaintiffs' claims with prejudice.

Dated: Huntington, New York
        April 10, 2024

                                        Respectfully submitted,

                                        *Steven J. Moser*
                                        Steven J. Moser

---

[11] As of April 1, 2024, there were 53,939 pending cases in the MDL against Johnson & Johnson. *See* *https://www.lawsuit-information-center.com/2-billion-verdict-in-missouri-motivates-jj-to-settle-talcum-powder-lawsuits.html* (last visited 4/3/2024).