UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK                    <u>For Online Publication Only</u>
------------------------------------------------------------------X
JIMMY L. ADKINS, KEREM BAY,
LANA BONGIOVI, CLEMENT CAMPBELL,
ANGELO CARPOLA, ALEXANDER CIOFFI,
PATRICK H. CRAIN, DAVID CRONK,
NANCY F. DEBE, DENNIS DELUCIE,
CHARLES J. ENGEL, MATTHEW FARRELL,            **<u>MEMORANDUM AND ORDER</u>**
BENNY FAILLA, ROBERT J. GIANI,                 16-CV-641(JMA)(SIL)
JOHN R. LACKENBAUER, JEAN-PARNELL
LOUIS, WILLIAM J. MAHER, MICHAEL G.
MCDOWELL, JOHN ROSSI, WILLIAM R.
SHANNON, FRED H. SMITH, GARY E.
SOBEK, DAMIAN SOBERS, CARMELA
SZYMANSKI, ANTHONY TANZA, and
CYNTHIA TORRES,

     Plaintiffs,

    -against-

GARDA CL ATLANTIC, INC.,

     Defendant.
------------------------------------------------------------------X
**AZRACK, United States District Judge:**

   The plaintiffs in this wage-and-hour case are former employees of Defendant Garda CL

Atlantic, Inc. ("Garda").  The Court dismissed the claims of 23 plaintiffs with prejudice in an order

dated August 16, 2018 ("August 2018 Order").  Currently pending before the Court is a motion by

plaintiffs, which asserts that the Court lacks subject matter jurisdiction due to incomplete diversity

between the parties and that, as such, the Court should vacate the August 2018 Order and remand

this removed action back to state court.  In response, Garda asserts, <u>inter alia</u>, that the Court can

salvage subject matter jurisdiction over this action by severing the one plaintiff, John Rossi, who

destroys diversity jurisdiction and remanding only his claim back to state court.  For the reasons

stated below, the Court:  (1) vacates the August 2018 Order only as to Rossi; (2) severs Rossi from

this action; (3) remands only Rossi's claims back to state court; and (4) otherwise denies Plaintiffs' motion to vacate and remand.

## I. BACKGROUND

In February 2016, Dennis D'Aguino and two other plaintiffs brought a putative class and collective action against Defendant Garda CL Atlantic, Inc ("Garda") alleging violations of the federal Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). (D'Aguino Compl., ECF No. 1.)[1]  The D'Aguino Complaint alleged overtime violations under both the FLSA and the NYLL as well as frequency of pay claims under NYLL § 191.  The D'Aguino Complaint alleged that Garda "had a uniform policy of refusing to pay overtime if the Plaintiffs worked 50 hours per week or less." (D'Aguino Compl. ¶ 1.)  D'Aguino and the two other named plaintiffs— Barry Dubrow and Donald Hess—worked at Garda's facility in Central Islip.  (Id. ¶¶ 11, 21.)

The D'Aguino plaintiffs were represented by attorney Steven Moser.

In March 2017, Jimmy Adkins and 25 other plaintiffs filed a related suit against Garda in New York State Supreme Court alleging claims under the NYLL concerning unpaid overtime, unpaid spread of hours, frequency of pay violations, and wage notices.  (Adkins Compl., Adkins v. Garda CI Atlantic, Inc., Case No. 17-cv-2532 (E.D.N.Y.), ECF No. 1.)

The Adkins plaintiffs were represented by attorney Ann Ball.

The Adkins Complaint alleged that the plaintiffs also worked at Garda's facility in Central Islip—which closed in March 2015—and were subject to Garda's policy of not paying overtime when they worked less than 50 hours per week.  (Adkins Compl. ¶¶ 6–7, 15.)

---

[1]  Unless otherwise noted, all citations are to the docket for Case No. 16-cv-641 (E.D.N.Y.)

According to the <u>Adkins</u> Complaint, "at all times herein mentioned plaintiffs <u>were</u> individuals residing in Suffolk County, New York."[2]  (<u>Id.</u> ¶ 1 (emphasis added.)

In April 2017, Garda promptly removed the <u>Adkins</u> action to this Court on the basis of alleged diversity of citizenship.  Garda's notice of removal stated that "[a]s Plaintiffs allege in the Complaint, they <u>are</u> residents of Suffolk County, New York.  (Notice of Removal ¶ 4, Case No. 17-cv-2532, ECF No. 1 (emphasis added).)  The notice alleged that diversity jurisdiction existed because Garda was a Delaware corporation with a principal place of business in Florida.[3]  (<u>Id.</u> ¶ 4).

Upon removal, the <u>Adkins</u> Plaintiffs did not seek to remand this action.  In May 2017, the Court held a status conference and consolidated the <u>D'Aguino</u> and <u>Adkins</u> actions.  (ECF No. 30; 17-cv-2532, ECF No. 9).[4]

In June 2017, Garda filed a pre-motion conference letter seeking leave to file a motion to dismiss the <u>Adkins</u> Complaint.  (ECF No. 31.)  Garda argued that, <u>inter alia</u>, the complaint failed to plausibly allege that the plaintiffs worked overtime for which they were not properly paid.  (<u>Id.</u> (citing <u>Lundy v. Catholic Health System of Long Island Inc.</u>, 711 F.3d 106, 114-15 (2d Cir. 2013), and <u>Nakahata v. New York-Presbyterian Healthcare Sys.</u>, 723 F.3d 192, 199–200 (2d Cir. 2013)).  In response to Garda's pre-motion conference letter, the <u>Adkins</u> Plaintiffs requested permission to

---

[2]  Attached to the <u>Adkins</u> Complaint was a verification from attorney Ball stating that "this verification is made by me and not by the plaintiff" because "some of the plaintiffs reside in a County other than the County where I maintain my office."  (<u>Id.</u> at 9.)

[3]  As explained further <u>infra</u>, it turns out that one plaintiff in <u>Adkins</u>, John Rossi, was actually a citizen of Florida at the time the <u>Adkins</u> complaint was filed and removed in the spring of 2017 (and has been a citizen of Florida since February 2015).  After Garda closed its facility in Central Islip in early 2015, Garda transferred Rossi to a Garda location in Florida where he worked for five months.  The Court was not alerted to any of these facts until 2020 when, as discussed further below, some of the plaintiffs in the <u>Adkins</u> matter disputed the Court's subject matter jurisdiction in an attempt to vacate the August 2018 Order.

[4]  Although the Court consolidated the cases and stated that the <u>Adkins</u> docket, Case No. 17-cv-2532, was to be closed, some documents were still erroneously filed on both dockets.

file an amended complaint because their original complaint had been filed in state court "where notice pleading is sufficient."  (ECF No. 32.)

On July 28, 2017, the Adkins plaintiffs filed an amended complaint with certain additional factual allegations about the plaintiffs' employment at Garda.  (Amended Adkins Complaint, ECF No. 33.)  The Amended Adkins Complaint was only filed on the 16-cv-641 docket.

The Amended Adkins Complaint alleged violations of the NYLL concerning overtime and frequency of pay.  (Id.)  However, attached to the complaint were consent forms signed by 24 of the 26 Adkins Plaintiffs.[5]  (Id.)  The body of the Amended Adkins Complaint did not explicitly allege any claims under the FLSA, but did include one sentence stating that "Plaintiffs consent to be parties to this action, pursuant to 29 U.S.C. §216(b) and their written consent form is attached hereto and incorporated by reference."  (Id. ¶ 53.)

With respect to jurisdiction, the Amended Adkins Complaint stated that Garda had removed this action from state court on the basis of diversity jurisdiction.  (Id. ¶ 2.)  The Amended Adkins Complaint also included additional factual allegations about the plaintiffs' residences.  The Amended Adkins Complaint indicates that, for some of the plaintiffs, the plaintiff "was, and is, an

---

[5]  These consent forms—which referenced both state and federal law—were not included with the original Adkins complaint.  Each of these signed consent forms stated:

> By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf concerning the failure of Garda CL Atlantic, Inc., its owners, managers, related companies, subsidiaries, officers, directors, franchisees and affiliates to pay me overtime premiums for work in excess of forty hours per week as required by *state and federal law*.  I authorize the filing of this consent in the action(s) challenging this conduct. I authorize being named as the representative "Named Plaintiff" in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorney's fees and costs, and all other matters pertaining to this lawsuit and agree to act in accordance with the best interest of the class.

(ECF No. 33 (emphasis added).)  With one exception, all these consents were executed in September and October 2016.  Clement G. Campbell executed his consent in July 2017.  The only Adkins plaintiffs who did not file consent forms were Dennis Delucie and Gary Sobek.

individual residing in Suffolk County" or Nassau County.  (See, e.g., Am. Complaint ¶¶ 5, 7, 9, 35.)  The Amended Adkins Complaint also indicated that certain other Plaintiffs were currently residing out of state.  (Id. ¶¶ 3, 11.)  With respect to Rossi, the Amended Adkins Complaint stated that he "was an individual residing in Suffolk County, presently residing in Florida."[6]  (Id. ¶ 37.)

Although attorney Ball surely knew, in both March and April 2017, that Rossi was residing in Florida at the time the original Adkins complaint was filed and the action was removed, the Adkins plaintiffs did not dispute the existence of diversity jurisdiction at this time or seek to remand the case.

After the filing of the Amended Adkins Complaint, Garda filed a renewed pre-motion conference letter concerning a proposed motion to dismiss.  (ECF No. 34.)  Garda asserted that the Amended Adkins Complaint still failed to allege plausibly allege overtime violations under Second Circuit precedent, including Lundy, 711 F.3d 106, and Dejesus v. HF Mgmt. Servs., LLC, 726 F.3d 85 (2d Cir. 2013).  (Id.)  Garda's pre-motion letter also addressed the consents that were attached to amended complaint.[7]

---

[6]  The Amended Adkins Complaint alleged that Rossi worked as a driver/messenger for Garda until September 2012. (Am. Adkins Compl. ¶ 38.)  However, a declaration Rossi submitted in 2020 and his deposition testimony in 2022 both suggest that he was employed as a driver for Garda in New York through early 2015 and continued to work for Garda as a driver during his five-month tenure with Garda in Florida.  (17-cv-2532, ECF No. 44; Rossi Dep. 37, 39–40.)  To the extent that the Amended Adkins Complaint incorrectly stated basic facts about Rossi's employment it could suggest that attorney Ball may not have been diligent in investigating the facts underlying the plaintiffs' claims.

[7]  With respect to the consents, Garda argued:

> The Adkins Plaintiffs erroneously purport to proceed both as individually named plaintiffs and as parties to a collective action.  This contradictory procedural flaw is prejudicial to Defendant.  Indeed, in the caption of the Amended Adkins Complaint, each of the 26 Adkins Plaintiffs are named as just that—individual Plaintiffs.  However, Paragraph 53 of the Amended Adkins Complaint states that the Adkins Plaintiffs purportedly consent to be parties to this action, pursuant to 29 U.S.C. § 216(b), and Plaintiffs have filed consent forms to become party plaintiffs in this action.  First, the Adkins Plaintiffs cannot proceed as a collective action under 29 U.S.C. § 216(b) because they assert no claims regarding, allegations about, or references to the FLSA whatsoever.  The inclusion of this new, single allegation and the various Consent to Become Party Plaintiff forms signed by the Adkins Plaintiffs only creates genuine ambiguity as to how the Adkins Plaintiffs intend to proceed herein.

(ECF No. 34 at 2–3 (emphasis in original).)

The <u>Adkins</u> Plaintiffs filed a response asserting that "Plaintiffs have sufficiently set forth a cause of action for damages pursuant to FLSA." (ECF No. 35 at 1.) Their letter also noted that "Section 207(a)(l) of FLSA requires that employers . . . pay their employees at the governing minimum wage and overtime wages, at a rate of time and one-half the regular hourly rate, for any hours worked in excess of forty hours per week."[8] (<u>Id.</u>)

On September 27, 2017, the Court held a pre-motion conference and set a briefing schedule for Garda's motion to dismiss. (ECF No. 38.)  In its motion dismiss, Garda argued that Plaintiffs failed to plausibly allege any overtime claims under the NYLL and that their frequency of pay claim under the NYLL failed as a matter of law. (ECF No. 44.) Finally, with respect to the FLSA and the consent forms attached to the Amended Complaint, Garda argued: "The *Adkins* Plaintiffs have characterized their claims as claims for unpaid overtime under NYLL, and not under any section of the FLSA, including 29 U.S.C. § 206; 29 U.S.C. § 207; and 29 U.S.C. § 215(a)(3). For this reason, the Court must dismiss the *Adkins* Plaintiffs' attempt to proceed as a collective action." (ECF No. 44 at 15–16.)

In their opposition brief, the <u>Adkins</u> Plaintiffs insisted that they had plausibly alleged NYLL overtime claims, but abandoned their frequency of pay claims under the NYLL. (ECF No. 46.) Plaintiffs also argued that, if necessary, the Court should permit them to amend the complaint again because, <u>inter alia</u>, Plaintiff's counsel had "received" "additional overtime documentation"

---

[8] The Adkins Plaintiffs' letter also referenced the consent forms, stating:

> Defendant's issue with the consent to be a party plaintiff as confusing and prejudicial is not an issue raised in good faith and is disingenuous as form over substance because the complaint specifically states the nature of the action as individual claims against the defendant. The consent forms appended to the complaint were prepared and signed by the individual plaintiffs (with one exception) before the state court action was instituted. After the Court directed plaintiffs to serve an amended complaint there was simply not enough time to have new consents signed by each individual plaintiff as several plaintiffs reside out of state, and others reside out of the county where I maintain my office.

(<u>Id.</u> at 2–3.)

after the preparation of the amended complaint.  (ECF No. 46 at 2.)  Plaintiffs, however, did not identify any additional allegations they would add to a second amended complaint.  (Id.)  Additionally, although the Adkins Plaintiffs' pre-motion conference letter had asserted that they were pursuing FLSA claims, their brief in opposition to the motion to dismiss abandoned any purported FLSA claims, saying nothing about § 216(b), the consent forms, or these FLSA claims.  (ECF No. 46.)

In an order dated August 16, 2018 (the "August 2018 Order"), the Court granted Garda's motion to dismiss in part and denied it in part.  (ECF No. 50.)  The Court found that, with the exception of three plaintiffs—Jimmy Adkins, Nancy Debe, and Jean-Parnell Louis—the Amended Adkins Complaint failed to plausibly allege overtime violations.  The Court explained that:

> The 23 Plaintiffs have not identified a work schedule or hours regularly worked and have only alleged that they "worked in excess of 40 hours per week each week." (See Compl. ¶ ¶ 72, 73, 76.)  The 23 Plaintiffs also fail to specify any particular week in which they were not paid overtime, or any other facts detailing the circumstances of an alleged overtime violation that would render their claims plausible.  Plaintiff Delucie does not even allege a job title or dates of employment.

(Id. at 7.)

The Court also denied Plaintiffs' request to file a second amended complaint, stressing, inter alia, that "[a]lthough plaintiffs' counsel states she received additional overtime documentation, she does not indicate what additional allegations she would add to the amended complaint that would cure its deficiencies."  (Id. at 10.)  With respect to the FLSA, the Court noted:

> Plaintiffs allege that they are proceeding as a collective action, pursuant to 29 U.S.C. § 216(b).  (Compl. ¶ 53.)  However, the Court notes that plaintiffs have characterized their claims as claims under the NYLL, and not under any section of the federal Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA").

(Id. at 3.)

While this consolidated wage-and-hour action was proceeding, there was also a putative class action before this Court alleging WARN Act claims arising out of Garda's closure of its Central Islip facility in 2015.[9] Tanza et al v. Garda Security, Inc. et al, No. 15-cv-4393 (E.D.N.Y.).

Eleven of the Adkins plaintiffs and one of the D'Aguino plaintiffs, Barry Dubrow, were also named plaintiffs in this WARN Act class action. (No. 15-cv-4393, ECF No. 1.) The Plaintiffs in Tanza were represented by Neil Frank and other attorneys from Frank's firm.[10]

In June 2018, the parties in Tanza had reached a class settlement and submitted a proposed motion for preliminary approval of that settlement. (15-cv-4393, ECF No. 71.) The proposed class settlement of Tanza involved, inter alia, release language that covered wage-and-hour claims. (15-cv-4393, ECF No. 71-2.)

In an effort to resolve the claims of the remaining six plaintiffs in the D'Aguino and Adkins matters, the Court encouraged the parties and counsel to engage in settlement discussions and eventually directed them to attend private mediation. (ECF Nos. 52, 53, 54.) Mediation was delayed by the death of plaintiff Barry Dubrow and other hurdles.[11] (See ECF Nos. 55–71.)

---

[9] A related putative class action alleging claims under the New York WARN Act, Tanza v. Garda CL Atlantic, Inc., No. 17-cv-03185 (E.D.N.Y.), was removed to this Court and eventually consolidated with Case No. 15-cv-4393.

[10] Frank also represented two of the Adkins plaintiffs, Jean-Parnell Louis and Charles Engel, in an employment discrimination suit against Garda that was filed, and eventually dismissed, in 2017. Louis et al v. Garda CL Atlantic, Inc., 17-cv-03186-JMA-AYS (E.D.N.Y.).

[11] For example, as recounted in the Court's August 16, 2019 Order, attorney Moser delayed the proceedings when he violated a court order and decided not to participate in mediation with a mediator that the parties had previously selected. (Aug. 16, 2019 Order.) This was not the first time Moser's conduct had delayed the proceedings and wasted the Court's time. In March 2019, the Court held a status conference on short notice in an attempt to resolve issues concerning Barry Dubrow's estate so the mediation could proceed. (ECF No. 58.) In advance of the conference, Moser provided the Court with Barry Dubrow's will, which indicated that Victor Dubrow was the executor. However, at the conference, it appeared that Moser had not even read the will he had sent to the Court and was somehow unaware that Victor Dubrow was named as the executor. (Id.)

Finally, on October 30, 2019, defense counsel provided a status update to the Court indicating that the parties had reached settlements with the remaining plaintiffs in the D'Aguino and Adkins matters.  (ECF No. 72.)

However, on November 7, 2019, counsel for Garda in the Tanza class action informed the Court that Neil Frank, who was the plaintiffs' counsel in Tanza, had been disbarred as of August 21, 2019.  (ECF No. 120.)  During October 2019, attorneys Scott Mishkin and Kyle Pulis had filed notices of appearance for some of the named plaintiffs in Tanza case.  The Court scheduled a status conference for both this case and Tanza to address these developments.  (See ECF No. 79.)

On December 16, 2019, Moser filed a letter asking the Court to approve, under the FLSA, the settlements reached by D'Aguino, Hess, and Dubrow's estate.  (ECF No. 74-1.)

Then, on January 3, 2020, attorney Ball filed a letter concerning the 23 Adkins plaintiffs whose claims had been dismissed with prejudice in the August 2018 Order.  (ECF No. 75.)  Ball's letter sought permission to file "a motion to reduce the amount in controversy for these Plaintiffs to $75,000.00 and to remand their complaint to state court."  (Id.)  Defendants opposed this confusing request by Ball, which attempted to retroactively manufacture grounds for remand.  (ECF No. 78.)

On January 21, 2020, a status conference was held to address the recent developments in both this case and the Tanza case.  (ECF No. 79.)  The minute entry for this conference ordered that "Counsel for the Adkins plaintiffs, Ann Ball, shall notify the Court and defense counsel whether she still wishes to make a motion to remand in accordance with her pre-motion conference letter.  Should Ms. Ball wish to make this motion, the parties shall submit a joint briefing schedule by 1/31/2020.  Defense counsel may make an application to the Court for Ms. Ball's billing records should she determine they are necessary to oppose the motion."  (ECF No. 79.)

On January 22, 2020, the Court approved the settlement agreements for D'Aguino, Hess, and Dubrow's estate and dismissed those claims with prejudice.  (ECF No. 80.)

The next day, Moser filed a stipulation indicating that he was substituting in as counsel of record for the 23 Adkins plaintiffs whose claims had already been dismissed in the Court's August 2018 Order.  (ECF No. 81.)  Moser informed the Court that he intended to file a letter "supplementing the bases" for Ball's contemplated remand motion.  (Id.)  Garda filed letters on January 24, 2020 and January 28, 2020 opposing Moser's attempted substitution.

On January 28, 2020, Moser filed a letter asserting that this Court lacked subject matter jurisdiction over the Adkins matter because complete diversity was lacking when the original Adkins complaint had been filed and removed in March and April of 2017.  (ECF No. 85.) Specifically, the letter asserted that Rossi had been a citizen of Florida since February 27, 2015. (Id.)  According to the letter, the absence of diversity jurisdiction required the Court to vacate all its prior orders concerning the Adkins matter, including the August 2018 Order on the motion to dismiss, and to remand the Adkins action back to state court.  (Id.)  The letter also argued that Garda's notice of removal was defective because it failed to plausibly allege that Rossi was a citizen of Florida when the complaint was filed.  (Id.)  Additionally, the letter asserted that Garda should not be permitted to obtain any jurisdictional discovery.  (Id.)  The letter asked the Court to issue an order to show cause directing Garda to respond to these jurisdictional issues.  (Id.)

That same day, Moser filed a notice of appearance for the 23 Adkins plaintiffs who had been dismissed in the August 2018 Order.  (ECF No. 83.)

In an order dated February 7, 2020, the Court rejected Moser's stipulation of substitution for various deficiencies and directed Moser to provide additional information.  (Feb. 7, 2020

Order.)  The Court informed the parties that "[u]pon resolution of the representation matter, the Court will address the issues raised by the parties regarding remand."  (Id.)

On February 14, 2020 Moser submitted information in response to the Court's order.  (17-cv-2532, ECF No. 32.)  That same day, Moser filed—only on the 17-cv-2532 docket—a declaration from Rossi attesting that:  (1) he moved to Florida in February 2015 and has continued, to date, to reside there with the intention to remain there indefinitely; (2) Garda transferred him to a Garda facility in Florida in March 2015; and (3) he provided Garda with his Florida address when he moved there.  (No. 17-cv-2532, ECF No. 44.)

On February 27, 2020, Garda filed a stipulation of dismissal concerning the outstanding claims of Adkins, Debe, and Louis.  (ECF No. 88.)  The stipulation was signed by both Ball and counsel for Garda.  (Id.)

On March 12, 2020, Moser filed a notice of interlocutory appeal concerning the August 2018 Order; this notice was purportedly filed on behalf of 18 of the dismissed Adkins plaintiffs.  (ECF No. 89.)  Moser signed the notice of appeal, which indicated that he and Ball were co-counsel.  (Id.)

On May 4, 2020, the Court received a mandate from the Second Circuit indicating that the parties had filed a stipulation withdrawing the appeal.  (ECF No. 95.)

On May 18, 2020, the Court "so ordered" the stipulation concerning Adkins, Debe, and Louis and dismissed their claims with prejudice.  (ECF No. 99.)  That same day, the Court granted the consents to change attorney and motions for substitutions filed by Moser as to 18 of the plaintiffs (including Rossi) whose claims had already been dismissed with prejudice in the August

11

2018 Order.[12]  (May 18, 2020 Order.)  The Court also scheduled a pre-motion telephone conference to address Plaintiffs' request to move to remand.  (Id.)

On May 22, 2020, a pre-motion conference was held and the parties were directed to submit a proposed briefing schedule for the motion to remand.  (ECF No. 101.)  The parties were directed to "identify what disputes, if any, remain regarding discovery related to the motion."  (Id.)

Jurisdictional discovery concerning Rossi's citizenship was delayed by numerous disputes and Rossi's refusal to respond to discovery and sit for a deposition.  In October 2020, Garda asked the Court to dismiss this case.  (ECF No. 114.)  Moser requested that the Court refer the case to mediation.  (ECF Nos. 115, 116.)  In April 2021, the Court denied Garda's request to dismiss the case and set a new schedule for the parties to complete jurisdictional discovery.  (April 1, 2021 Order.)  Later that day, Moser sought to withdraw as Rossi's counsel.  (ECF No. 117.)   On April 26, 2021, Garda filed another letter requesting that, due to Rossi's failure to participate in discovery, the Court should close the case.[13]  (ECF No. 121.)

The parties eventually completed jurisdictional discovery, including Rossi's deposition, in the fall of 2022.[14]  (ECF No. 129.)

_____

[12]  In June 2020, Moser would also replace Ann Ball as counsel for plaintiff Clement Campbell.  (ECF No. 102.).  Subsequently, in January 2024, the Court would permit Moser to withdraw as counsel for plaintiffs Dennis Delucie, Charles Engel, and Matthew Farrell.  (Jan. 19, 2024 Order.)

[13]  Garda's request that the Court should simply close the case due to Rossi's failure to respond to discovery raised some vexing issues.  First, if the Court simply closed the case, the question of whether subject matter jurisdiction existed would have been left unresolved.  Second, although in an ordinary case the Court might have simply dismissed Rossi's claim for his failure to respond to discovery, here, Rossi's claim had already been dismissed with prejudice so dismissal was not an available sanction.  Third, there was also a question as to what, if any, impact a sanction based on Rossi's failure to respond to discovery would have on the other plaintiffs' attempts to vacate the Court's August 2018 Order for lack of subject matter jurisdiction.  After weighing these concerns, the Court decided that the parties should be required to undertake further efforts to complete the jurisdictional discovery involving Rossi.

[14]  In Plaintiffs' pending motion to remand, Plaintiffs state that Garda failed to "furnish" certain documents concerning Rossi.  (ECF No. 144 at 1; see also ECF No. 140-1 at 3–4.)  Plaintiffs appear to rely on Garda's failure to provide any documents concerning Rossi in an attempt to show that Garda failed to adequately investigate Rossi's citizenship before filing its notice of removal.  Garda's conduct in removing this action and its relevance to the question of whether Rossi should be severed are addressed infra.  To the extent Plaintiffs assert Garda failed to comply with its discovery obligations, the Court rejects any such argument.  A final discovery schedule was set in May 2022 and the parties

After additional delays, some of which were attributable to the parties and others which were attributable to the Court, Plaintiffs filed the instant motion to vacate and remand. Even the filing of this motion could not be completed without further controversy as Moser served a reply brief on Garda thirty-seven days after the deadline set by the Court because he allegedly failed to "calendar the reply date." (ECF No. 147.) Moser also claimed to have only discovered, on April 2, 2024—more than a year-and-a-half after Rossi's deposition—that he did not have a copy of the deposition, which he needed to prepare his reply brief. (Id.) In light of Moser's delays, Garda moved to strike the reply brief. (ECF No. 146.) While the Court has grounds for striking the brief, the Court will nevertheless deny Garda's motion to strike and will consider the reply brief.[15]

## II. DISCUSSION

### A. Parties' Arguments

Plaintiffs' motion seeks: (1) to vacate the August 2018 Order for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 60(b)(4); and (2) to remand this action, pursuant to 28 U.S.C § 1447(c), back to state court. Plaintiffs' motion contends that this Court lacks subject matter jurisdiction over the Adkins matter because Rossi was a citizen of Florida when the complaint was filed and removed and, thus, complete diversity was lacking. Plaintiffs

---

were instructed that "[I]f any dispute concerning discovery should arise, the parties must meet and confer prior to filing any letters concerning the dispute with the Court." (ECF No. 128.) On November 2, 2022, Plaintiffs—without raising any objections—reported that jurisdictional discovery was complete. (ECF No. 129.)

[15]  After Garda raised questions about Moser's continued representation of certain plaintiffs, (ECF No. 132), Moser filed a motion on August 22, 2023 to withdraw as counsel for three of the plaintiffs, (ECF No. 137.) The Court subsequently granted that motion. (Jan. 19. 2024 Order.) Moser's August 22 motion to withdraw also indicated that plaintiff Alexander Cioffi had died and that Moser was preparing to file a motion to substitute Cioffi's widow, Sara Cioffi, no later than August 25, 2023. (ECF No. 137.) While Moser never filed this motion to substitute or any notice of appearance of behalf of Sara Cioffi, the reply brief he filed in April 2024 represents that he is the attorney for "Sara Cioffi (as Administratrix of the Estate of Alexander Cioffi)." (ECF No. 144.) Given the above, Moser is not counsel of record for Sara Cioffi or the Estate of Alexander Cioffi and neither of those parties are currently before the Court. The Court considers the instant motion to vacate and remand to have been filed only by the 15 other plaintiffs listed on the reply brief.

also contend that Garda's notice of removal was defective because it: (1) only alleged that the plaintiffs were residents, rather than citizens, of New York; and (2) falsely alleged that Rossi was a resident of New York.

Garda responds that:

(1) Rossi was actually a citizen of New York in the spring of 2017;

(2) the case cannot be remanded back to state court pursuant to § 1447(c) because the Court's May 18, 2020 order dismissing the claims of final three Adkins plaintiffs constitutes a final judgment and cases cannot be remanded under § 1447(c) after final judgment; and

(3) even if Rossi is a citizen of Florida and, thus, destroyed complete diversity, the Court can "salvage" subject matter jurisdiction by severing Rossi, which would result in complete diversity between Garda and the other plaintiffs.

Plaintiffs oppose the severance of Rossi sought by Garda.

As explained further below, the Court finds that Rossi is a citizen of Florida, but agrees with Garda that jurisdiction can be—and should be—salvaged by severing Rossi and remanding only his claims to state court.

## B. Standards for Motions to Remand and Vacate

"Two requirements must be met for diversity jurisdiction: (1) the amount in controversy in the case must exceed $75,000 and (2) the case must be between 'citizens of different States' or 'citizens of a State and citizens or subjects of a foreign state,' such that there is complete diversity of citizenship between every plaintiff and every defendant." Windward Bora LLC v. Browne, 110 F.4th 120, 125–26 (2d Cir. 2024) (quoting 28 U.S.C. § 1332(a)(1) & (2)).

For cases removed to federal court, 28 U.S.C. § 1447(c) provides that: "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

14

Rule 60(b)(4) states that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding [if] . . . the judgment is void." "[R]elief under Rule 60(b)(4) is only available "when the court plainly usurped jurisdiction, or, put somewhat differently, when there is a total want of jurisdiction and no arguable basis on which it could have rested a finding that it had jurisdiction." Gater Assets Ltd. v. AO Moldovagaz, 2 F.4th 42, 53 (2d Cir. 2021) (quoting Cent. Vt. Pub. Serv. Corp. v. Herbert, 341 F.3d 186, 190 (2d Cir. 2003); see also Nemaizer v. Baker, 793 F.2d 58, 60 (2d Cir. 1986) (applying "plainly usurp" standard where party sought to vacate stipulated dismissal with prejudice based on argument that the district court lacked subject matter jurisdiction over action, which had been removed from state court).

## C. Procedural Deficiencies in Garda's Notice of Removal Do Not Require Remand

When removing an action from state court, a defendant must file "a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). "A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under [28 U.S.C. § 1446(a)]." 28 U.S.C. § 1447(c). A defendant's failure to sufficiently allege subject matter jurisdiction in the notice of removal is a procedural defect under 28 U.S.C. § 1446(a) and does not necessarily require remand.

Here, the relevant question is not whether the notice of removal was facially sufficient, but whether: (1) complete diversity existed, as a factual matter, at the time of filing and removal; and (2) if complete diversity was lacking, whether Rossi should be severed.

**D.  The Parties' Arguments Concerning § 1447(c) and a "Final Judgment"**

The parties dispute whether this Court entered a "final judgment" for purposes of 1447(c). Garda maintains that the Court's May 18, 2020 dismissal of the remaining three Adkins plaintiffs with prejudice constituted a final judgment in this case and therefore the Plaintiffs cannot invoke § 1447(c) to remand this case.  Plaintiffs assert that no final judgment has been entered.  Plaintiffs also contend that, based on Moser's January 28, 2020 letter, they challenged the existence of diversity jurisdiction prior to the Court's May 18, 2020 dismissal order.[16]

The parties' briefs concerning whether and when a final judgment was entered in this case are underdeveloped and do not cite any relevant authorities or caselaw.  Ultimately, this dispute is academic given the Court's determination, set out below, that subject matter jurisdiction over the other Adkins plaintiffs can be salvaged by severing Rossi.  The presence, absence, or timing of a final judgment would not alter the Court's authority to sever Rossi or the Court's decision that Rossi's severance (and the remand of his claim to state court) is appropriate here.[17]

**E.  Rossi Should Be Severed to Salvage Diversity Jurisdiction**

Thus, the critical issues are:  (1) whether Rossi was a citizen of Florida; and (2) if he was, should the Court sever him to salvage jurisdiction.

The Court finds, based on Rossi's declaration and deposition testimony, that Rossi was, in fact, a citizen of Florida in the spring of 2017 when the Adkins complaint was filed and subsequently removed to federal court.  Accordingly, the Court turns to the question whether Rossi should be severed from this action.

---

[16]  At the time Moser's January 28, 2020 letter was filed, Moser had not yet been properly substituted as counsel for the 23 plaintiffs whose claims had previously been dismissed.

[17]  Garda admits that the Court may "remand Mr. Rossi's claims."  (ECF No. 142 at 1.)

"Federal Rule of Civil Procedure 21 allows a court to drop a nondiverse party at any time to preserve diversity jurisdiction, provided the nondiverse party is not 'indispensable' under [Federal Rule of Civil Procedure 19(b)]." Call Ctr. Techs., Inc. v. Grand Adventures Tour & Travel Pub. Corp., 635 F.3d 48, 51 (2d Cir. 2011) (quoting CP Solutions PTE, Ltd. v. Gen. Elec. Co., 553 F.3d 156, 159 (2d Cir. 2009) (per curiam) (citation omitted)). There is "considerable caselaw directing [courts] to salvage jurisdiction where possible in litigation . . . that has proceeded to final judgment." Universal Reinsurance Co. v. St. Paul Fire & Marine Ins. Co., 312 F.3d 82, 90 (2d Cir. 2002). "Once a district court has proceeded to final judgment, considerations of finality, efficiency, and economy become overwhelming,"[18] United Republic Ins. Co., in Receivership v. Chase Manhattan Bank, 315 F.3d 168, 170 (2d Cir. 2003) (quotation marks and citations omitted)).

"The Court's power to sever parties to preserve diversity jurisdiction is not limited to those actions that were filed in federal court and extends to actions removed pursuant to 28 U.S.C. § 1441." Johnson v. Johnson & Johnson Inc., No. CV 18-10319, 2021 WL 165099, at *3 (D.N.J. Jan. 19, 2021) (dismissing non-diverse plaintiffs); see Sweeney v. Westvaco Co., 926 F.2d 29, 42 (1st Cir. 1991) (dismissing non-diverse defendant in removed action in order to salvage jurisdiction); Ingram v. CSX Transp., Inc., 146 F.3d 858, 862–63 (11th Cir. 1998) (dismissing, on appeal, new defendant joined after removal in order to "retroactively restore[] complete diversity").

---

[18] The questions of whether, technically, a final judgment has been entered in this case and, if so, when exactly that occurred, do not materially affect the analysis. The August 2018 Order dismissed the claims of 23 plaintiffs with prejudice and Plaintiffs waited more than a year after that adverse decision to challenge the Court's subject matter jurisdiction. Even assuming arguendo that there is no final judgment in this case, the considerations of finality, efficiency, and economy are still overwhelming in this case given all the circumstances.

Rossi is not indispensable. Plaintiffs, however, argue that the Court should not sever Rossi because his severance would purportedly prejudice the other Adkins plaintiffs whose claims were dismissed with prejudice in the August 2018 Order.

When determining whether to sever a party in order to salvage jurisdiction, courts consider whether any party to the litigation would be "unduly prejudiced." Universal Reinsurance Co., 312 F.3d at 90; see also McKie v. Kornegay, No. 21-1943, 2022 WL 4241355, at *2 (2d Cir. Sept. 15, 2022) (dismissing non-diverse party on appeal in order to reach the merits of the defendants' motion to dismiss).

Plaintiffs maintain that they would be prejudiced by Rossi's severance because, if this case had been litigated in state court, New York courts would have scrutinized the Adkins complaints under a more liberal notice pleading standard rather than the plausibility standard applicable in federal court. Plaintiffs insist that, under the more liberal New York standard, their pleadings would have survived a motion to dismiss in state court. Thus, according to Plaintiffs, they would be prejudiced if Rossi is severed and the August 2018 Order is allowed to stand as to the remaining 22 Adkins plaintiffs whose claims were dismissed with prejudice.

The Court assumes that a New York State court would have applied a more liberal notice pleading standard to the complaint in 2017 if the case had remained in state court. See Gutierrez v. Bactolac Pharm., Inc., 210 A.D.3d 746, 747, 177 N.Y.S.3d 704, 705 (2d Dep't 2022). However, the Court concludes that Plaintiffs have not been "unduly prejudiced" in a manner that would warrant denying Garda's request to sever Rossi from this suit.

Plaintiffs' claim of undue prejudice is simply not persuasive given all the circumstances here. As set out in the August 2018 Order, the Adkins Plaintiffs (and their attorney) decided to file an amended complaint that included essentially no details about 23 of the plaintiffs. Despite

her obligation to speak with her clients and perform a reasonable investigation of their claims, plaintiff's attorney did not include, in the Amended Adkins Complaint, any details or particulars about the employment, schedules, and work hours of the 23 plaintiffs whose claims were ultimately dismissed.  Because these plaintiffs had an adequate opportunity to allege plausible overtime claims, the Court finds that they were not unduly prejudiced by litigating in federal court.

In considering claims of alleged prejudice, courts often look to whether the presence of the non-diverse party provided a "tactical advantage" to the prevailing party that prejudiced the losing parties' litigation of claims in the federal court such that it would not be appropriate to uphold the federal judgment as to the remaining diverse parties.  See SCS Commc'ns, Inc. v. Herrick Co., 360 F.3d 329, 337–38 (2d Cir. 2004) ("[T]here is little case law on what constitutes a tactical advantage.  However, the cases suggest that the presence of the nondiverse party must have materially affected the course of the trial proceedings.").  Here, Rossi's presence did not prejudice the other plaintiffs' litigation of their claims in federal court.  This Court would have dismissed the other 22 plaintiffs even if Rossi had never been part of this case.[19]

Moreover, in weighing Plaintiffs' claim of prejudice and deciding whether to sever Rossi in order to "salvage" jurisdiction, the Court can consider the conduct of the parties in connection with the jurisdictional defect and any delay in challenging jurisdiction.  See Universal Reinsurance Co., 312 F.3d 82, 90 (2d Cir. 2002) ("[P]laintiffs could easily have avoided [the alleged prejudice] in light of the preexisting caselaw defining diversity and directing federal courts to salvage jurisdiction where possible in cases such as this."); Molinos Valle Del Cibao, C. por A. v. Lama,

---

[19] Plaintiffs have not cited, and this Court has not found, any authority denying—long after a dismissal on the merits—severance of a party necessary to salvage diversity jurisdiction based on an argument that if, counterfactually, the action had been litigated in state court a state law pleading standard, summary judgment standard, or other procedural rule might have led to a different outcome.  In any event, as explained infra, when weighing claims of prejudice, courts also consider the objecting party's conduct in not promptly raising known jurisdictional defects.

633 F.3d 1330, 1345 (11th Cir. 2011) ("[E]ven if Oscar Sr. did suffer a tactical disadvantage, he had the power to remedy that issue. He, Oscar Jr., and Carlos were represented by the same counsel, who could have discovered that Oscar Jr. and Carlos were Dominican citizens. What is more, Oscar Sr. must have known his sons' immigration statuses. Had Oscar Sr. raised these jurisdiction concerns earlier in the district court—or even at all—we might be sympathetic; as he did not, we are not."); Ingram, 146 F.3d at 862–63 ("Ingram claims that she will be prejudiced if we exercise our dismissal power here because the statute of limitations has expired on any claim she may have had against the City. This consideration might be persuasive where a litigant raises the jurisdictional issue at an earlier stage in the proceedings. Ingram, however, waited until her oral argument presentation on appeal-long after the district court's adverse ruling on the merits of her case. We decline to reward such delay.").

The Court acknowledges that Garda is not blameless here. Garda removed this action to federal court and alleged residency in its notice of removal rather than citizenship. Additionally, given the vague phrasing in the Adkins Complaint concerning residency and the fact that Rossi had worked for Garda in Florida for five months in 2015, Garda had some reason to suspect, when filing its Notice of Removal in April 2017, that Rossi might not have been a citizen of New York in the spring of 2017. Garda should have investigated Rossi's citizenship further prior to removal. That said, Plaintiffs (and their counsel) are at fault for waiting until 2020 to alert the Court to Rossi's citizenship in Florida. Attorney Ball surely knew that Rossi was living in Florida when she filed the complaint in April 2017. Plaintiffs could have sought to remand this case back to state court in the Spring of 2017. Instead, the Adkins plaintiffs did not oppose consolidation of D'Aguino and Adkins, filed an amended complaint, litigated the motion to dismiss, and then waited more than 16 months after the adverse ruling in the Court's August 2018 Order to raise this

jurisdictional defect. Additionally, the Adkins plaintiffs did not file any papers disputing the Court's jurisdiction until after Garda had settled the claims of the six outstanding plaintiffs, which suggests jurisdictional gamesmanship.

It is also relevant that, after removal, Plaintiffs muddied the jurisdictional waters by: (1) citing § 216(b) of the FLSA in the Amended Adkins Complaint; (2) filing consents that referenced both state and federal law; (3) asserting in their pre-motion conference letter that they were pursuing federal FLSA claims; and (4) then abandoning, without any mention or explanation, any such claims under the FLSA in their subsequent briefing on the motion to dismiss.[20]

Given the all the circumstances here, the Court concludes that Rossi should be severed in order to salvage jurisdiction See Gillespie v. Dring, No. 3:15-CV-00950, 2021 WL 4989888, at *1 (M.D. Pa. Oct. 27, 2021) (rejecting plaintiffs' attempt, after losing on summary judgment, to "effectively unwind the last six years of litigation and dismiss the matter in its entirety" because

---

[20]   As explained above, the Court finds that jurisdiction can be salvaged by severing Rossi, which establishes the requisite complete diversity for jurisdiction under § 1332. The Court, however, may have also had, at the time of the August 2018 Order, jurisdiction over the Adkins plaintiffs under 28 U.S.C. § 1367. As detailed above, the Adkins plaintiffs cited the FLSA in their amended complaint, filed consents that referenced both "state" and "federal" overtime claims, and explicitly stated in their pre-motion conference letter that they were asserting FLSA claims before subsequently abandoning these purported FLSA claims. Given all the circumstances, there is, at the very least, a colorable argument that, upon the filing of the Amended Adkins Complaint and these related documents, the Court: (1) had jurisdiction over the Adkins plaintiffs' purported FLSA claims based on 28 U.S.C. § 1331 and; (2) thus, also had the ability to exercise supplemental jurisdiction over their NYLL claims pursuant to § 1367 (and to ultimately dismiss those claims with prejudice). In light of all the circumstances here, it would be appropriate to retroactively exercise supplemental jurisdiction over the NYLL claims.

The exercise of supplemental jurisdiction described above would not be precluded by the Supreme Court's recent decision in Royal Canin U. S. A., Inc. v. Wullschleger, 604 U.S. 22, 22 (2025). Royal Canin held that, in a case removed to federal court on the basis of federal question jurisdiction, a district court cannot exercise supplemental jurisdiction over state law claims if, after removal, the plaintiff files an amended complaint that eliminates the federal claims. Here, the Adkins Plaintiffs did not: (1) file a second amended complaint that deleted the reference to the FLSA; or (2) formally withdraw their consents—which referenced "federal" law—that they had filed as attachments to their first amended complaint. Instead, the Adkins plaintiffs simply abandoned their purported FLSA claims through their opposition brief and their conduct. Moreover, to the extent Rule 60(b)(4) is applicable, the Supreme Court's newly minted decision in Royal Canin would not preclude the Court from concluding that there was, at the very least, an arguable basis for exercising supplemental jurisdiction over the NYLL claims in 2018. See Royal Canin, 604 U.S. at 42 n. 9 ("We do not at all fault any court that relied on the Rockwell footnote to find jurisdiction in a case like this one. Courts that did so simply took us at our word, in a way both understandable and appropriate.").

one of 117 property owners named as plaintiffs was not diverse and dismissing non-diverse plaintiff in order to preserve diversity jurisdiction).

None of Plaintiffs' arguments against severance are persuasive.  While severing Rossi will not completely avoid the need for further litigation, there is a compelling interest here, given all the circumstances, in salvaging jurisdiction to uphold the August 2018 Order as to the 22 plaintiffs.

Plaintiffs cite to several cases in which the jurisdictional defect was raised <u>at the outset of litigation</u> and courts denied attempts to sever parties in order to create diversity jurisdiction.  <u>See Abruzzo Docg Inc. v. Acceptance Indem. Ins. Co.</u>, No. 20-CV-4160, 2021 WL 5304058, at *1 (E.D.N.Y. Nov. 15, 2021) (plaintiffs filed prompt motion to remand); <u>Reinschmidt v. Exigence LLC (Del.)</u>, No. 13-CV-1153-A, 2014 WL 2047700, at *1 (W.D.N.Y. May 19, 2014) (court immediately raised jurisdictional defect <u>sua</u> <u>sponte</u> and denied plaintiff's motion to sever).  Such cases, however, are clearly distinguishable and implicate different concerns than are present here.

Finally, Plaintiffs contend that Rule 21 has only previously been used in removed cases to sever non-diverse plaintiffs in multi-district litigation involving thousands of plaintiffs from numerous states.  (ECF No. 144 at 9–10 (citing <u>Johnson</u>, 2021 WL 165099, at *3)).  Even assuming Plaintiffs are correct, neither the Second Circuit nor the Supreme Court have precluded district courts from severing a non-diverse plaintiff in other types of removed cases, particularly when, as occurred here, the plaintiffs waited until long after an adverse ruling to raise a jurisdictional defect they knew about from the outset.  Given all the circumstances here, severing Rossi is appropriate.

## III.  CONCLUSION

For the reasons stated above, the Court:  (1) vacates the August 2018 Order only as to Rossi; (2) severs Rossi from this action; (3) remands only Rossi's claims back to Supreme Court of the State of New York, Queens County; and (4) otherwise denies Plaintiffs' motion to vacate and remand.

The Clerk of Court is directed to:  (1) remand Rossi's claims back to Supreme Court of the State of New York, Queens County; and (2) enter judgment as to the other plaintiffs and to close this case.[21]

**SO ORDERED.**

Dated:  April 21, 2025
Central Islip, New York

_____/s/ (JMA)_____
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE

---

[21]  As the Court explained earlier, in order to decide this motion, it is unnecessary to determine if there was a final judgment in this case (and, if so, when that occurred).  That said, in an abundance of caution, the Court directs the Clerk to enter the judgment set out above.  The Court does not intend, by this action, to resolve the question of whether a final judgment already existed in this case and, if so, when that judgment was entered.